UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| RL REGI Financial, LLC, | ) | |
|---|---|---|
| | ) | C.A. No. 7:09-cv-02236-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| DDB of Spartanburg, LLC, Jimmy L. Davis, L.E. Deavours, a/k/a Loomis Esteze Deavours, Jr., Deavours Investments, L.P., Cantrell's Auto Repairs, Inc., and MCC Outdoor, LLC, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on Defendant MCC Outdoor, LLC's ("MCC") Renewed Motion for Summary Judgment [Doc. 88]. Based upon the record before the court, MCC's motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from RL REGI Financial, LLC's ("RL REGI") efforts to collect amounts due under a commercial mortgage loan (the "Loan") that was made to Defendant DDB of Spartanburg, LLC ("DDB") by Regions Bank on March 23, 2006, for the purpose of financing the construction and development of a residential subdivision in Spartanburg County, South Carolina, known as Orchards at Reidville.[1] In its Complaint, RL REGI alleged that its mortgage of a property at 3804 Clemson Boulevard, Anderson, South Carolina owned by Cantrell's Auto Repairs, Inc. ("Cantrell's"), has priority over a lease held by MCC on the same property. MCC filed a

---

[1]This action was commenced by Regions Bank who subsequently sold its interest in the Loan to RL REGI. For convenience, the court will reference all pleadings on behalf of the plaintiff in this case as those of RL REGI.

1

counterclaim seeking a declaratory judgment that its leasehold interest has priority over the mortgage interest held by RL REGI.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

MCC contends that its lease on the property at issue in this case is entitled to priority over RL REGI's claims against the property because Regions Bank had actual notice of the lease prior to its acceptance of a mortgage on the property. Specifically, MCC notes that the lease and the existence of the billboard sign on the property were expressly acknowledged by Regions Bank in an appraisal report completed prior to the execution of the mortgage.

In South Carolina, the priority of competing interests in real property is governed by statute. Under S.C. Code Ann. § 30-7-10,

> All deeds of conveyance of lands, . . . all mortgages or instruments in writing in the nature of a mortgage of any real property,. . . all leases or contracts in writing made between landlord and tenant for a longer period than twelve months, . . . or other liens on real property created by law or by agreement of the parties and generally all instruments in writing conveying an interest in real estate required by law to be recorded in the office of the register of deeds or clerk of court . . . , except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration **without notice**, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.

*Id*. (emphasis added). South Carolina's "race-notice" recording statute seeks to protect any interest acquired without notice of a prior interest, provided that the subsequent interest is recorded before the recording of the prior interest. *See Spence v. Spence*, 368 S.C. 106, 118, 628 S.E.2d 869, 875 (2006). However, a purchaser or creditor acquiring an interest in real property may be charged with

3

knowledge of the rights of another in the property through actual or constructive notice. *See id*. Where the purchaser or creditor has knowledge of the prior interests, the statute does not provide protections from the effects of such prior interests. *See id* (citing *Tauber v. Com. ex rel. Kilgore*, 263 Va. 520, 562 S.E.2d 118, 127 (2002) (purchaser of real property is bound by both actual and constructive notice and has no right to shut his eyes or ears to the inlet of information, and then say he is a bona fide purchaser for value without notice)); *see also Regions Bank v. Wingard Properties, Inc.*, 394 S.C. 241, 255, 715 S.E.2d 348, 355 (Ct. App. 2011) (noting that the purpose of the recording statute is to protect those who acquire a subsequent interest without notice, and that the holder of a subsequent interest who has actual notice of a prior interest cannot prevail under the recording statute by virtue of filing first).

> [A] purchaser of [or creditor with an interest in] real property has actual notice of a title defect or other claim, lien, or interest adverse to his own in a particular property when he actually knows about the defect or claim, or when a reasonable person, if made aware of the same information known to the buyer, would be charged with actual notice of the defect or claim. Actual notice may consist of facts or conditions observed by a prospective purchaser as well as information conveyed orally or in writing to him.

*Spence*, at 118, 628 S.E.2d at 875. "However, constructive or inquiry notice in the context of a real estate transaction often is grounded in an examination of the public record because it is the proper recording of documents asserting an interest or claim in real property which gives constructive notice to the world." *Id*. at 119, 628 S.E.2d at 876. "Constructive or inquiry notice in the context of a real estate transaction also may arise when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. The party will be charged by operation of law with all knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed." *Id*. at 120, 628 S.E.2d at 876.

4

It is undisputed that Regions Bank commissioned and received an appraisal on the Cantrell's property prior to taking a mortgage on the property to secure the Loan. It is further undisputed that the letter accompanying the appraisal report, which is addressed directly to an employee of Regions Bank, indicates that there is a "leased billboard space" on the property and describes the property as a "Leased Fee estate." *See* Appraisal Cover Letter, at 2 [Doc.41-1, at 3]. The appraisal expressly defines the term "lease" as "a written contract in which the rights to use and occupancy [sic] land or structures are transferred by the owner to another for a specified period of time in return for a specified rent." *See* Appraisal Report, at 10 [Doc. 41-4, at 3]. The appraisal also defines "leased fee interest" as "an ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the lessee are specified by contract terms contained within the lease." *Id*. Additionally, the appraisal references the leased billboard space several times within the document and specifically notes that the appraiser considered the actual rent of four thousand dollars per year from the leased billboard site in valuing the property. *Id*, at 102 [Doc. 41-9, at 9].

Although Regions Bank's representative, Rand Peterson, acknowledges that Regions Bank received the appraisal and that someone at Regions Bank likely reviewed it prior to the Loan transaction, RL REGI contends that Regions Bank cannot be charged with knowledge of MCC's leasehold interest in the Cantrell's property at the time Regions Bank took the mortgage on the property. However, because it is undisputed that Regions Bank received the appraisal report which clearly indicated the existence of a "leased billboard site" on the property, Regions Bank and RL REGI are charged with actual notice, under South Carolina law, by virtue of the information which was conveyed to them in writing concerning the leased billboard space. *See Spence*, at 118, 628

5

S.E.2d at 875. Furthermore, under South Carolina law, Regions Bank and RL REGI had constructive knowledge of the existence of the leasehold interest. Despite RL REGI's, arguments to the contrary, the appraisal was sufficient to inform Regions Bank of facts which would have revealed the interest. The fact that Regions Bank did not undertake any investigation regarding the lease noted in the appraisal does not save the argument. The appraisal clearly indicated that a leased billboard site existed on the property and referenced the actual rental rate. Even the most cursory inquiry, had Regions Bank made any, would have further revealed the extent of the interest. Because the appraisal was sufficient to give Regions Bank and RL REGI notice of the leasehold interest, the court finds that MCC's lease has priority over the mortgage held by RL REGI on the Cantrell's property.

RL REGI contends that, even if the appraisal provided notice of the leasehold interest, the unrecorded leases are not valid because they were not executed in the name of Cantrell's, but instead by the sole shareholders of Cantrell's. However, it is well established that a corporation may only act through its agents. *See Chapman-Storm Lumber Corp. v. Minnesota-South Carolina Land & Timber Co.*, 183 S.C. 31, 190 S.E. 117, 118 (1937). Furthermore, a contract entered into by an officer or shareholder of a corporation on behalf of the corporation is binding on the corporation. *See Olin Mathieson Chemical Corp. v. Planters Corp.*, 236 S.C. 318, 324, 114 S.E.2d 321, 324 (1960). This is particularly so where the corporation accepts the beneficial interest of such transaction. *See L.F.S. Corp. v. Kennedy*, 287 S.C. 162, 164, 337 S.E.2d 209, 210 (1985).

The evidence in this case establishes that the shareholders entered into the unrecorded leases for the benefit of Cantrell's and that Cantrell's ratified their actions by accepting the benefits of the

leases. Therefore, the unrecorded leases were valid and the court finds RL REGI's arguments on this point without merit.

RL REGI further argues that the unrecorded lease dated May of 2000 cannot be used to establish priority over its mortgage because the unrecorded lease was terminated and superceded by a recorded lease dated April of 2007. The parties have not cited, and the court did not find, any authority applying South Carolina law to this issue. However, it is generally accepted that a renewal or extension of an obligation or interest will not result in a loss of priority absent material prejudice to the junior interest holders. *See* 55 Am. Jur. 2d Mortgages § 288; Restatement (Third) of Property: Mortgages § 7.3 (1997).

In this case, Regions Bank took its mortgage subject to the May of 2000 lease which provided for an initial term of fifteen years and automatic renewals on an annual basis thereafter unless one of the parties to the lease provided the other with notice of termination. The May of 2000 lease further provided an annual rental rate for the last five years of the initial term in the amount of four thousand five hundred dollars. *See* [Doc. 41-10]. Cantrell's and MCC entered into a subsequent lease agreement dated April of 2007. The April of 2007 lease provides for an initial lease term of ten years with optional yearly extensions not to exceed ten additional years. The April of 2007 lease does not mention the May of 2000 lease. However, the rental rate is the same as the effective rate contained in the May of 2000 lease. Also, while the April of 2007 lease does specifically exclude any prior oral or verbal agreements between the parties, it does not indicate either party's intention to exclude any prior written agreements between the parties. *See* [Doc. 39-7].

The only evidence in the record indicates that the April of 2007 lease was merely an extension of the May of 2000 lease. Because the May of 2000 lease contained an evergreen renewal

7

clause and the April of 2007 lease provides for a definite term not to exceed twenty years, the court finds that RL REGI has not been materially prejudiced by such extension. Had Cantrell's and MCC not extended their agreement under the April of 2007 lease, RL REGI could have arguably been subject to continuous extensions of the May of 2000 lease in perpetuity. Accordingly, the court finds RL REGI's argument that the unrecorded May of 2000 lease was terminated and superceded by a recorded lease dated April of 2007 unpersuasive.

## CONCLUSION

For the foregoing reasons, Defendant MCC Outdoor, LLC's Renewed Motion for Summary Judgment [Doc. 88] is **GRANTED** and the court hereby determines that Defendant MCC Outdoor, LLC's leasehold interest in the subject property retains priority over the mortgage interest asserted by Plaintiff RL REGI Financial, LLC, as successor in interest to Regions Bank.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 24, 2012
Greenville, South Carolina